No. 15,310.

PERKINS *v.* UNION CENTRAL LIFE INSURANCE COMPANY.
(158 P. (2d) 389)

Decided April 2, 1945. Rehearing denied April 30, 1945.

Mr. GUY D. DUNCAN, Mr. A. H. HAMILTON, Mr. B. F. REED, for plaintiff in error.

Messrs. GARWOOD & GARWOOD, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

AN action by the Union Central Life Insurance Company, to which we shall refer as the insurance company, against a Mrs. Perkins, so designated herein, to cancel a contract for the purchase of real property. The trial court instead of decreeing cancellation, rendered a judgment in favor of the company for approximately $8,000 and treated the matter as one of foreclosure, Mrs. Perkins being given nine months in which to redeem. No attempt was made to redeem, and upon the expiration of the nine-month period, the court entered the final decree, giving the insurance company title and right to immediate possession, but specifically denying any deficiency judgment. Mrs. Perkins seeks reversal on a writ of error.

The contract, Exhibit A, bears date of September 21, 1938, and the face consideration is $8,480, payable "Fifty & No/100 ($50.00) Dollars on September 1, 1938, and a like amount on the first day of each succeeding month thereafter to and including December 1, 1938, and the remaining installments for Sixty-three & No/100 ($63.00) Dollars each," plus $13.00 a month to apply on

the taxes, insurance, etc., making total monthly payments of $76.00 until the full amount is paid, together with interest at 4½ per cent per annum, and a penalty of eight per cent on delinquent payments.

Mrs. Perkins is an elderly woman, and at the time she signed the contract, September 21, 1938, there is evidence that she was not strong physically, but was mentally alert. The property involved was the family home, more recently converted into an apartment building containing six apartments. Prior to 1932 the insurance company held a mortgage on the property which was foreclosed, and in 1932, following the foreclosure, it entered into a contract with Mrs. Perkins to finance the place for $6,936.67. Her payments were to be $50 a month under that contract, and she made such payments for some time. During the period that this contract was in force, Mrs. Perkins was advised by her brother, Mr. Duncan, one of the attorneys in this case. During 1937 and 1938 negotiations were had anticipating a new contract which ultimately resulted in the signing of Exhibit A. Mrs. Perkins admits that Mr. Patton, representing the insurance company, spent two hours in reading and going over Exhibit A with her, but insists that he told her orally that the balance on the contract was to be $6,000 instead of $8,480. However, after the contract was signed, Mrs. Perkins made payments thereunder for thirteen months, and each month she received a monthly receipt from the insurance company showing the payment and exactly how it was applied to payment of principal, interest and reserve for taxes. The correctness of any of these receipts was never challenged.

 We do not find in the record support for the contention that there was to be a settlement on a basis of $6,000. Exhibit 1 (the September 1, 1932 contract), under which Mrs. Perkins had been making payments, shows an indebtedness of $6,986.67 and her signed agreement to purchase (Exhibit 2 dated July 31, 1937) names

a price of $8,675.48. This offer was not accepted by the insurance company, and as late as July 5, 1938, Mr. Duncan wrote the insurance company stating that the redraft of the contract shows a consideration of $8,600, and asking that the monthly payments remain as they were. That she did sign Exhibit A is shown by her signature, properly acknowledged before a notary. It is too well settled to require citation of authority that all prior negotiations are merged into a written contract.

Mrs. Perkins' alleged defenses were lack of equity; unclean hands on the part of the insurance company; that the contract was fraudulent, oppressive, erroneous, invalidated by duress, mistake, and that the action on it was vexatiously, wantonly and maliciously prosecuted. We think it clearly appears from the record that none of these defenses was established. If the court had declared a forfeiture, we might have been more concerned about the alleged inequity of the proceeding, but in view of the fact that the trial court decreed a foreclosure and gave defendant nine months in which to redeem, we do not believe she has any just cause for complaint.

The only important point we need to consider is whether the trial court's judgment of $8,093.34 is supported by the record under Exhibits A, C, D and E. Exhibits C are copies of the receipts given each month as above noted. Exhibit E is a tabulation showing exactly how the face amount of $8,480 was determined. The item on the last receipt, showing the balance due, is $7,532.79. The last item on the ledger sheet is $7,532.79. The delinquencies appearing on Exhibit D amount to $561.23, which, added to the above balance of $7,532.79, makes a total of $8,094.02 which is only 68 cents more than the judgment. This small amount would come under the rule of de minimis non curat lex and as such does not form the basis for reversal. Exhibit A contains the usual provision relating to a declaration of the whole amount becoming due upon default, and that payments made prior to default shall be

considered and retained by the insurance company as compensation for the possession, occupation and use of the premises.

Mrs. Perkins' continued tender of $50 a month under the former contract is unavailing.

We believe the following citation is conclusive in this case: "When once the choice was made in favor of the 15-payment contract [in the case at bar, Exhibit A], that contract must be given full effect as the only subsisting contract between the parties." *Kansas City Life Ins. Co. v. Pettit*, 99 Colo. 268, 270, 61 P. (2d) 1027.

Finding no reasonable basis in the record for reversal, the judgment is affirmed.

MR. JUSTICE KNOUS and MR. JUSTICE JACKSON concur.